UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HERBERT M.,                                       )
                                                  )
          Plaintiff                               )
                                                  )
v.                                                )          2:20-cv-00236-JDL
                                                  )
ANDREW M. SAUL, Commissioner of                   )
Social Security,                                  )
                                                  )
          Defendant                               )

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff was not disabled as of his date last insured, through December 31, 2011, and that his disability began as of July 1, 2015.[1]  Defendant, therefore, denied Plaintiff's request for disability benefits under Title II and granted Plaintiff's request for benefits under Title XVI, to begin on his disability onset date.   Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

---

[1] Plaintiff applied for disability insurance benefits and supplemental security income on July 7, 2015, alleging disability beginning on March 2, 2006.  (R. 314-15, 316-22.)  His claims were denied initially, upon reconsideration and after an administrative hearing.  (R. 126-31, 132-37. 140-48, 161-75.)  The Appeals Council granted Plaintiff's request for review and remanded the case for a new hearing.  (R. 176-80.)  Following the second hearing, the ALJ issued the partially favorable decision.  (R. 12-36.)

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the July 30, 2019 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 11-2).[2] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, but that he did not have a severe impairment or combination of impairments prior to July 1, 2015. (R. 19.) The ALJ found that beginning on July 1, 2015, Plaintiff had severe, but non-listing-level impairments consisting of chronic obstructive pulmonary disease (COPD), asthma, chronic hepatitis C, and arthritis of the bilateral knees. (R. 26.) The ALJ further determined that Plaintiff had a residual functional capacity (RFC) to perform sedentary work, except he could not work around dust, gases, fumes or other environmental pollutants. (R. 27.)

Based on the RFC finding, the ALJ found that Plaintiff could not return to past relevant work. (R. 29.) Given that Plaintiff was an individual closely approaching retirement age as of July 1, 2015, and did not have work skills transferable to other occupations within the assessed RFC, the ALJ concluded that there were no jobs existing in significant numbers in the national economy that Plaintiff could perform.[3] (*Id.*)

---

[2] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

[3] The ALJ noted that even if Plaintiff had an RFC for the full range of sedentary work, a finding of disability was directed by Medical-Vocational Rule 201.06. (*Id.*)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff challenges the ALJ's decision that Plaintiff was not disabled prior to July 1, 2015, including from his alleged onset date of Mach 2, 2006, through his date last insured for Title II disability benefits in 2011. Plaintiff argues that the ALJ (1) failed to assess properly the testimony of medical expert Michael Buckwalter, M.D., regarding Plaintiff's work limitations prior to his date last insured, and (2) failed to weigh properly the opinions of other medical experts as to Plaintiff's functional limitations prior to his date last insured.

**A.  Testimony of Michael Buckwalter, M.D.**

Dr. Buckwalter testified that Plaintiff has severe impairments of COPD, asthma,

chronic hepatitis C, arthritis of both knees, and obesity.  (R. 95.)[4]  Dr. Buckwalter further

testified that Plaintiff's COPD and asthma were well-established in the record by 2006.

(R. 98.)  Dr. Buckwalter also noted that the medical record established that Plaintiff had a

liver biopsy and course of interferon related to his hepatitis C in 2003, and that the record

includes multiple references to Plaintiff's significant fatigue, to which hepatitis C

contributes.  (R. 96-97.)  As to the effect of Plaintiff's hepatitis C from 2006 to 2016,

however, Dr. Buckwalter could not "really give a clear picture," because "we really don't

have any information at all to tell us what this claimant did in that time period."  (R. 96-

97.)

When questioned by the ALJ whether he had an opinion regarding Plaintiff's

functioning "for the period from 2006 to the end of 2011," Dr. Buckwalter replied:

> It's fairly difficult to render an opinion.  The record certainly reflects the
> presence of these impairments, except for the knees.  I don't believe there is
> much at all about the knees in this time period.  I think briefly.  But it's fairly
> difficult to gauge any sort of – to come to a conclusion in that time period as
> far as the claimant's functioning.  It's really speculative.

(R. 102.)  When the ALJ asked whether he was saying "that it doesn't look like these

impairments created these limitations or there just isn't enough information to determine

whether the impairments existed at a severe level," he responded:

> Yes, there's not enough information to really allow me to comment on what
> the functioning might be in the time period.  The data's fairly sparse.

(R. 103).  Dr. Buckwalter agreed that if Plaintiff's impairments from that period "were at

---

[4] The transcript of Dr. Buckwalter's testimony initially references "Hepatitis B" (R. 95), but that appears to be either an error in the transcription or Dr. Buckwalter misspoke, because he subsequently referenced hepatitis C (*see* r. 96-98) and the medical records reference hepatitis C.

the level that would impact him," he would have anticipated more medical records.  (*Id*.)

Plaintiff's counsel then questioned Dr. Buckwalter, who agreed with counsel's statement that his prior testimony "sounded like you didn't really have an opinion as to functionality" for the period "2006, 2011."  (R. 104.)  Dr. Buckwalter also agreed that he did not "see any way [he] could parse [the medical records] to obtain one."  (*Id*.) Subsequent inquiry by Plaintiff's counsel produced the following exchange:

> Q  … Do we have any indication of the severity – I mean, without being speculative, either of the COPD or the chronic Hep C in that period, he clearly had both ….
>
> A  Right.  Yeah, … the information that we have, no information in the way of any function pulmonary studies, we know the claimant was treated with the antiviral with the Hepatitis C ….  But these are kind of little glimpses to the patient's functioning in the time period, it's not a whole lot to give me a complete picture of functioning….
>
> Q  … Typically, and again, I'm not asking you to speculate, but typically when you have COPD at Stage 2, a moderate level, any way of determining, particularly in the context of this record, how long that had been there? …
> I mean, are the conditions that would create the COPD, do they have to be of long standing?
>
> A  I'd say yes.  Typically, COPD develops slowly, gradually over a time period of generally in a decade or two.  So I have no doubt that the claimant would be impacted in the early time period, but it would be hard to say at exactly what point.  We're looking at ten years prior – twelve years prior to the pulmonary function studies.  And so, my best guess is that they were likely at a mild, perhaps Stage 1, … at that point.
>
> Q  … I don't want to push you on this --- is that a really educated guess or simply a guess?
>
> A  That's the best guess I can offer, based on the limited information I have.
>
> Q  Okay, but it has some scientific support.

> A  Sure.  Yeah.
>
> …
>
> Q  So assuming he had a mild level of COPD in 2011, what would that do in terms of functional capacity, assuming … you can say something.
>
> A  … I think the mild COPD with the known Hepatitis C, … perhaps a light level of functional capacity, … stand, walk six hours combined.

(R. 104-05.)

> The ALJ summarized Dr. Buckwalter's testimony as follows:
>
> Dr. Buckwalter noted that the bulk of the medical evidence in the record referenced the period after the claimant's date last insured in 2011, and that the earlier evidence was fairly limited.  He testified that the limited evidence available that related to the period between the claimant's alleged onset date and his date last insured was not sufficient to support an opinion on any functional limitations which may have existed at this time.

(R. 24-25.)  The ALJ gave great weight to Dr. Buckwalter's opinion, noting that it was consistent with the evidence.  (R. 25.)  The ALJ further explained that Plaintiff testified that he had stopped working in 2006 because he had been told that he had a good five years left to live and he wanted to spend that time with his family, rather than working.  (R. 25.) The ALJ cited providers' notes reflecting Plaintiff's self-described status as "retired" rather than disabled.  (R. 25.)  She also emphasized Plaintiff's reported activities of daily living, which included mowing the lawn, driving, shopping, caring for his grandchildren, and acting as a caretaker for his elderly in-laws.  (*Id*.)

Plaintiff contends that the ALJ failed to discuss sufficiently the testimony of  Dr. Buckwalter, which testimony, Plaintiff maintains, compels a different result.  More specifically, Plaintiff argues that the ALJ was required to address Dr. Buckwalter's testimony that Plaintiff had "perhaps a light level of functional capacity, … stand, walk six

hours combined" because such a limitation would be dispositive. [5]

Contrary to Plaintiff's argument, the ALJ sufficiently addressed Dr. Buckwalter's testimony and substantial evidence supports the ALJ's assessment of the testimony.  Dr. Buckwalter described any opinions regarding the period from 2006 to the date last insured as "speculative" or a "guess."  Dr. Buckwalter's testimony that "perhaps" Plaintiff had a light functional capacity with the ability to stand and walk for six hours combined is consistent with Dr. Buckwalter's testimony that an opinion as to Plaintiff's functional capacity during the period would be speculative.  In sum, the ALJ's assessment of Dr. Buckwalter's testimony is supported by substantial evidence on the record.

**B.  Opinions of Arthur M.  Scott, M.D. and Robert N. Phelps, M.D.**

Plaintiff argues that the ALJ erred when she concluded that the opinions of examining physicians Arthur M. Scott, M.D. and Robert N. Phelps, Jr., M.D. did not relate to the period prior to Plaintiff's adjudged onset date of July 1, 2015.

Dr. Scott evaluated Plaintiff in April, 2016. (Exh. 3F.)  The following is written under "Chief Complaints" in the record prepared following the evaluation: "The claimant alleges disability from 03/02/2006 due to hypertension, hepatitis C, and asthma and an add on was knee pain disorder."  (R. 452.)  In the "Functional Assessment of Ability to Work,"

---

[5] Plaintiff argues that a restriction to light exertional work as of the date last insured would direct a finding of disabled, given that Plaintiff's past work was at the medium exertional level, he lacks transferable skills, and he turned 55 years of age on January 7, 2010.  Defendant contends the standing and walking restrictions Dr. Buckwalter offered are equally consistent with medium work.  20 C.F.R. § 404.1567(c), Social Security Ruling 83-10, 1983 WL 31251, at *6 ("A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.")  Defendant also argues that rule 203.15, the grid rule in 2011 for medium work applicable to someone Plaintiff's age and with Plaintiff's vocational characteristics, would direct a finding of not disabled.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2, tbl. 3.

Dr. Scott does not reference a time period.  For instance, in the assessment of Plaintiff's ability to stand and walk, maximum lifting and carrying capacity, postural activities, and manipulative activities, Dr. Scott writes "very limited," and then describes the bases of the assessments. (R. 457-458.)  He does not in any way suggest that he has assessed Plaintiff's capacity for a period of years before the evaluation.  Dr. Scott's note that there "were no medical records available for review" (*id*.) also supports the ALJ's conclusion that Dr. Scott's opinion did not relate to the period prior to July 1, 2015.

Similarly, although Dr. Phelps stated in his report following a May, 2019, evaluation that the purpose of the evaluation was "to determine what [Plaintiff's] impairments/limitations have been since on or before 03/02/2006 and whether he has been disabled since that time" (r. 657), in his assessment, Dr. Phelps describes the limitations in the present tense (e.g., "ability to lift is limited …," "standing is limited," "walking is limited …") and does not discuss how, if at all, the current limitations relate to the period prior to July 1, 2015. (R. 657, 661-663.)

The First Circuit has declined to infer retroactivity to medical opinions dated years after the date last insured.  *See Deblois v. Sec'y of Health and Human Serv.*, 686 F.2d 76, 80 (1st Cir. 1982).  Consistent with this view, in *Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919, at *5 (D. Me.) (rec. dec. *aff'd*, Jul. 29, 2011), this Court determined that the ALJ could rely on a present tense opinion to conclude the opinion reflected the claimant's current condition.  Given that neither Dr. Scott nor Dr. Phelps described Plaintiff's limitations as applicable to the period prior to July 1, 2015, the ALJ did not err when she concluded that the opinions of Drs. Scott and Phelps did not "reasonably relate[]

to the period prior to [Plaintiff's] established onset date." (R. 26.)

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 27th day of May, 2021.